UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In the Matter of the Application of<br>CHING CHUNG TAOIST ASSOCIATION OF HONG KONG LTD.<br>For an Order to Conduct Discovery for Use in a Foreign Legal Proceeding Pursuant to 28 U.S.C. § 1782 | Case No. 3:16-mc-80157-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE N A FOREIGN LEGAL PROCEEDING PURSUANT TO 28 U.S.C. § 1782** |

## INTRODUCTION

Ching Chung Taoist Association of Hong Kong Ltd. ("CCHK") filed an *ex parte* application under 28 U.S.C. § 1782 to take discovery for its lawsuit in Australia against Timothy Yau.[1] Section 1782 allows a district court to order a person residing or found within its district to produce documents or provide testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. The court grants the application for all witnesses except for Mr. Yau. CCHK may revisit the issue again after the Australian court decides the pending motion about discovery from Mr. Yau.

---

[1] Application — ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No. 3:16-mc-80157-LB)

**STATEMENT**

CCHK is based in Hong Kong; it filed a lawsuit in New South Wales, Australia, to gain control over its oversees branch in Australia — the Taoist Association of Australia ("TAA") — by removing Timothy Yau, a former director of CCHK, from his positions as a director and a member of TAA.[2] There are two claims in the Australia lawsuit: (1) enforcement of a Nominee Agreement that requires Mr. Yau to act in the interests of CCHK and that provides that CCHK may remove Mr. Yau with or without cause; and (2) enforcement of a Governance Agreement in the form of an order that CCHK is within its rights to remove TAA's remaining directors and members.[3]

CCHK discusses the genesis of Mr. Yau's relationship with CCHK, the evolution of his responsibilities to overseas promotion of Taoism on behalf of CCHK, his sole responsibility for overseeing the day-to-day responsibilities of the overseas branches, and the significant trust that CCHK placed in him based on his seniority, his willingness to manage the branches, and his superior English-speaking abilities.[4] It emphasizes how the Nominee Agreement and the Governance Agreement were implemented to ensure CCHK's ultimate authority and control over TAA, and how TAA operated for CCHK's benefit.[5]

CCHK describes its Canadian lawsuit to discharge mortgages granted in its favor and how it became concerned during that lawsuit that TAA was not using funds provided by CCHK for proper purposes.[6] That resulted in CCHK's General Secretary and Executive Director Woo Loi Tony Chau's sending letters to Mr. Yau and TAA to transfer Mr. Yau's membership rights in TAA to Mr. Chau as CCHK's nominee and ultimately resulted in the Australian lawsuit.[7]

---

[2] Dettmer Decl. — ECF No. 2, ¶ 16.

[3] *Id.* ¶¶ 17–18.

[4] Chau Affidavit — ECF No. 2-2 & 2-3, ¶¶ 45−46, 58−59, 62−63, 65−66, 75, 80, 83, 153−155, 158, 167.

[5] Memorandum of Law — ECF No. 1-1 at 9 (summarizing exhibits about the agreements).

[6] Chau Affidavit — ECF No. 2-2 & 2-3, ¶¶ 169–171, 176.

[7] *Id.* ¶ 177.

CCHK seeks discovery about the relationship between CCHK and its overseas branches and Mr. Yau, mostly to establish CCHK's ultimate control over TAA and Mr. Yau, and Mr. Yau's alleged violation of that arrangement.[8] Specifically, they seek leave to serve subpoenas for documents, communications, and testimony about shares that TAA has in Goldman Holdings (especially why shares in Goldman Holdings were donated to TAA), loans from TAA to Goldman Holdings, and loan funds paid to TAA through the Taoist Association of America.[9] This is relevant to the Australian lawsuit because the transactions will show that CCHK directed transactions among its overseas entities and that the overseas entities were intended to and did act for and at the direction of CCHK.[10] The discovery also is important to understanding the Governance Agreement between CCHK and TAA.[11] The loan to Goldman Holdings was a $500,000 loan in 2010 to purchase a building; Goldman Holdings repaid the loan in 2011.[12]

CCHK has limited information about the transaction among CCHK, TAA, and Goldman Holdings; a 1998 TAA financial report reflects an asset in the form of a $3M investment in Goldman Holdings, and a 1999 report reflects a $3M asset listed as "Unlisted shares donated from Hong Kong — at donor's valuation."[13] CCHK wants to understand why and how the transaction occurred, the proportion of TAA's share of Goldman Holdings, and the role CCHK played in directing the transaction.[14]

There are nine subpoenas to four individuals and five corporations.[15] The following chart summarizes the document requests.[16]

---

[8] Memorandum of Law — ECF No. 1-1 at 11.

[9] *Id.* at 11–12; Dettmer Decl. — ECF No. 2, ¶¶ 3, 19.

[10] *Id.* ¶ 19.

[11] *Id.*; Memorandum of Law — ECF No. 1-1 at 11–12.

[12] *Id.* at 12.

[13] Dettmer Decl. — ECF No. 2, ¶ 20 & Exs. O & P.

[14] *Id.* ¶ 20.

[15] *See* Dettmer Decl., Ex. C — ECF Nos. 2-4, 2-5, & 2-6.

[16] *See id.*

| Request # | Description |
|---|---|
| 1 | Documents and communications relating to financial transactions between Goldman Holdings and TAA, including loan agreements, financial statements, general ledgers, other financial records, and the authorization or execution of transactions. |
| 2 | Documents and communications relating to the transfer of shares between Goldman Holdings and TAA, including receipt or payment of funds, issue of shares, payment of dividends, and the authorization or execution of transfers. |
| 3 | Documents and communications relating to loans between Goldman Holdings and TAA, including loan agreements, financial statements, general ledgers, other financial records, and the acquisition or negotiation of loans. |
| 4 | Documents relating to the current or former shareholders of Goldman Holdings including share registers and share transfer logs. |
| 5 | Documents relating to communications between Mr. Yau and Goldman Holdings. |
| 6 | Documents relating to communications between Goldman Holdings and the Taoist Association of America and its agents, directors, employees, or representatives. |
| 7 | Documents and communications relating to financial transactions between TAA and the Taoist Association of America, including loan agreements, financial statements, general ledgers, other financial records, and the authorization or execution of transactions. |
| 8 | Documents and communications relating to the transfer of shares between TAA and the Taoist Association of America, including receipt or payment of funds, issue of shares, payment of dividends, and the authorization or execution of any transfer. |
| 9 | Documents and communications relating to any loans between TAA and the Taoist Association of America, including loan agreements, financial statements, general ledgers, other financial records, and the acquisition or negotiation of any such loan. |
| 10 | Documents relating to current or former shareholders of Taoist Association of America including share registers and transfer logs. |
| 11 | Documents relating to communications between Taoist Association of America and Mr. Yau. |

The subpoenaed witnesses are as follows.[17]

| Witness | Description |
|---|---|
| Timothy Yau | Resides in San Francisco. |
| Goldman Holdings (allegedly controlled improperly by Mr. Yau) | CCHK owned 100% at incorporation; now jointly owned by TAA and the Taoist Association of America. Goldman Holdings owned a building at 644 Broadway in San Francisco; Mr. Yau orchestrated its sale in 2016; the whereabouts of the proceeds are unknown. Resides in San Francisco. |

---

[17] Memorandum of Law — ECF No. 1-1 at 12–14 (summarizing Exhibits to Dettmer Decl.).

| Witness | Description |
|---|---|
| Taoist Association of America (allegedly controlled improperly by Mr. Yau) | California religious organization and the controlling shareholder of Goldman Holdings; CCHK's former leader designated Mr. Yau and Joe K. Ling to act as trustees of the Taoist Association of America for the benefit of CCHK. Resides in San Francisco. |
| American Evergreen Taoist Church | California religious organization established to promote Taoism. Mr. Yau is the registered agent and CEO. Resides in San Francisco. |
| United Evergreen Taoist Religious Federation | California religious organization established to promote Taoism. Mr. Yau is the registered agent and CEO. Resides in San Francisco. |
| Chennault & Totah CPAs | Accountants in San Francisco for the United States Taoist Religious Federation and the Taoist Association of America. Resides in San Francisco. |
| Bill Leung | Attorney for Taoist Association of America and Goldman Holdings. Resides in San Francisco. |
| Kinson Wong | Officer of American Evergreen Taoist Church and secretary of Taoist Association of America; CEO Golden Mountain Restaurant, which once operated at 644 Broadway (Goldman Holding's former building). Resides in San Francisco. |
| Joe K. King | Treasurer of American Evergreen Taoist Church and Taoist Association of America; former treasurer of the defunct Golden Mountain Restaurant. Resides in Mill Valley. |

CCHK advised the court that Mr. Yau's Australian counsel objects to its request for discovery from Mr. Yau and will ask for an injunction in Australia to prevent a subpoena for documents from Mr. Yau or a deposition of him.[18] CCHK's Australian counsel agreed not to depose the witnesses or serve subpoenas until after it completed its "reply evidence" in the Australian action.[19] Mr. Yau's Australian counsel then threatened to seek an injunction unless CCHK's counsel agreed to permanently refrain from subpoenaing Mr. Yau.[20] CCHK's counsel responded that it would not take a deposition or serve a subpoena until after the primary affidavit evidence was served in Australia unless there is a default in the current timetable there; Mr. Yau is scheduled to complete his evidence by October 7, and CCHK will complete its reply evidence (or not serve any) shortly thereafter.[21] CCHK's counsel also agreed to give Mr. Yau's Australian

---

[18] Notice to Court — ECF No. 4 at 2 & Ex. 1.

[19] *Id.* at 2 & Ex. 2.

[20] *Id.* at 3 & Ex. 3.

[21] *Id.* at 3 & Ex. 4.

ORDER (No. 3:16-mc-80157-LB)　　　　5

counsel three days' notice before serving any subpoena authorized here.[22] Mr. Yau's counsel then filed a motion for an order to prevent CCHK from deposing Mr. Yau or from serving any subpoena to him for documents.[23] The matter is set for a hearing on November 18.[24]

CCHK asks that the court issue the subpoenas, and it will refrain from serving Mr. Yau until after the Australian court hears the motion about Mr. Yau, and it will not serve the subpoenas on the other witnesses until the parties serve their primary affidavit evidence in the Australian case unless there is a default in the current timetable there.[25] Alternatively, it asks the court to issue the subpoenas to all witnesses except Mr. Yau until after the Australian court hears the motion; it then can proceed with discovery immediately after either the parties' service of their primary affidavit evidence or any default in the timetable (subject to the three days' notice it promised Mr. Yau's Australian counsel).[26]

## GOVERNING LAW

28 U.S.C. § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

A litigant in a foreign action qualifies as an "interested person" under § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). In order to apply for discovery pursuant to § 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id*. at 258–59. Instead, all that is necessary is that a "dispositive ruling" by the

---

[22] *Id.*

[23] *Id.* at 3 & Ex. 5.

[24] *Id.* at 4.

[25] *Id.*

[26] *Id.*

ORDER (No. 3:16-mc-80157-LB)  6

foreign adjudicative body is "within reasonable contemplation." *Id*. at 259 (holding that discovery was proper under § 1782 even though the applicant's complaint against the opposing party was only in the investigative stage). An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may raise objections and exercise their due process rights by bringing motions to quash the subpoenas).

A district court has wide discretion to grant or deny discovery under § 1782. *Intel*, 542 U.S. at 260–61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264–65.

A district court's discretion is to be exercised in view of the twin aims of § 1782: "providing efficient means of assistance to participants in international litigation . . . and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2004). There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261–63.

## ANALYSIS

The court grants the discovery for all witnesses except Mr. Yao; it denies the application for discovery from him without prejudice to CCHK's raising the issue again after the November hearing in Australia.

**1.  Statutory Requirements**

CCHK's application satisfies the statutory requirements of § 1782. The persons or entities all reside in the Northern District of California; the discovery sought is "for use" in the Australian lawsuit; and CCHK is an "interested person" in those proceedings.

**2.  Intel Factors**

The discretionary *Intel* factors also support granting the application for all witnesses except Mr. Yau.

**2.1  First *Intel* Factor: Participant in a Foreign Proceeding.**

The first *Intel* factor is whether the "person from whom discovery sought is a participant in the foreign proceeding." 542 U.S. at 264. If a person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, unavailable in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Only one witness is a party in the Australian lawsuit; eight are not. As to the eight, the foreign tribunal does not have jurisdiction over them, and it cannot order them to produce evidence. *Cf. Intel*, 542 U.S. at 264. This factor weighs in favor of discovery.

As to Mr. Yao, CCHK points out that Australia cannot order the discovery either.[27] "Pretrial discovery of documents as understood in common law countries is not generally available in Australia." Timothy P. Harkness et al., Federal Judicial Ctr., Discovery in International Civil Litigation: A Guide for Judges, 2015 WL 9056194 (2015). In the Equity Division of the Supreme Court of New South Wales (the operative court in this case), there is a general prohibition on any

---

[27] Memorandum of Law — ECF No. 1-1 at 17–18.

discovery before the filing of all evidence.[28] The court appreciates that pretrial discovery generally is not available for parties but it does appear that the Australian court can order it in exceptional circumstances. Also, it seems unusual to authorize broader discovery against a party for use in an Australian court of equity that limits discovery to have swift resolution of cases and allows discovery only if it is "necessary for the resolution of the real issues in dispute in the proceedings."[29] For now, and in part based on the motion pending before the Australian court, the court denies the application for discovery from Mr. Yau.

### 2.2   Second *Intel* Factor: The Foreign Proceedings

The second *Intel* factor requires the court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." 542 U.S. at 264.

This factor weighs slightly in favor of discovery. In *Intel*, the Court "question[ed] whether foreign governments would be offended by a domestic prescription permitting, but not requiring, judicial assistance." *Id.* at 243–44.

> A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts. A foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).

*Id.* at 244.

Moreover, there is no information that the Australian court would reject information obtained through § 1782 discovery; in this situation, courts "err on the side of permitting discovery." *See In re Varian Medical Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). In a 2012 case in this district, the Supreme Court of New South Wales granted a

---

[28] *Id.* at 17–19 (citing Supreme Court of NSW Practice Note SC Eq 11, available at http://www.lawlink.nsw.gov.au/practice_notes/nswsc_pc.nsf/a15f50afb1aa22a9ca2570ed000a2b08/180b8c6777403534ca2579c9000c11a4?OpenDocument (last checked September 16, 2016)).

[29] Supreme Court of NSW Practice Note SC Eq 11, *supra* n. 28.

ORDER (No. 3:16-mc-80157-LB)             9

petitioner's request to take evidence here, and this court then allowed discovery under § 1782. *In re Futurecorp Int'l Pty Ltd.*, Case No. 3:12-mc-80267-CRB (LB), 2012 WL 5818288, at *3 (N.D. Cal. Nov. 15, 2012).

### 2.3   Third *Intel* Factor: Evasion of Foreign Proof Gathering Restrictions

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 264–65. There is no evidence of this on this record. Also, CCHK will not serve the subpoenas on the other witnesses until the parties serve their primary affidavit evidence in the Australian case unless there is a default in the current timetable there. And it is important too that the discovery is available only in this district.

### 2.4   Fourth *Intel* Factor: The Discovery Is Not Unduly Burdensome

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." 542 U.S. at 265. At least conceptually, it is not, if it is tethered to the two claims in the Australian case. After CCHK serves the discovery, it must confer with counsel to address burden issues and must comply with the procedures for resolving discovery disputes in the undersigned's standing order, which is attached.

## CONCLUSION

The court grants CCHK's application for discovery for all witnesses except Mr. Yau. CCHK will not serve the subpoenas on the other witnesses until the parties serve their primary affidavit evidence in the Australian case, and it will provide three days' notice to Mr. Yau's Australian counsel. The court denies the application for discovery from Mr. Yau without prejudice.

**IT IS SO ORDERED.**

Dated: September 23, 2016

_____
LAUREL BEELER
United States Magistrate Judge

ORDER (No. 3:16-mc-80157-LB)            10